Good morning, Your Honors. My name is Aaron Gott with Bonilaw PC on behalf of AmeriCare MedServices Appellant. We've given five minutes of our time to the State of California. For our remaining ten minutes, I'd like to reserve two of that for rebuttal, if possible. Go right ahead, just watch the clock. Thank you. May it please the Court. The state action immunity is a limited and disfavored doctrine, and it has a singular purpose, to preserve the balance of federalism. That balance is already aligned here. The State of California has decided that competition is the best policy for pre-hospital EMS services, and it is specifically determined that each of the geographic markets in question are supposed to be competitive markets. The appellees have issued this policy, and they've excluded all competition from each of these markets, and consumers have suffered as a result. The Court should reverse, first because the appellees cannot show that they were acting pursuant to a clearly articulated state policy to displace competition. Is that the question, whether 1797.201 applies to cities? Is that the nub of the matter? I think it is, Your Honor, but a state policy is more than just a particular statute. It's the entire state regulatory policy. Well, speaking of federalism, which court system should decide that? Well, Your Honor, the state courts might decide what state policy are, and the state legislature decides what state policy is, but as far as the state action immunity is concerned... Interpreting whether this statute, 1797.201, applies to cities, because if it does, you lose. If it doesn't, you win. So which court system decides that issue? This court, Your Honor. Tell us why. Because this is about the state action immunity, and about whether or not there's a clearly articulated state policy to displace competition. Only federal courts can decide whether or not there's a state policy to displace competition. The federal courts decide the reach of the antitrust laws. Right, but not whether or not, but what we don't decide is whether the state, the cities in this case, municipalities, are in compliance with that law. A state court can make that decision, right? A state court might decide whether or not they're eligible, but I don't think it's a matter of compliance, Your Honor. That's different, but just to sort of bifurcate this, if we could, it seems to me the second question about whether or not the municipalities are in compliance, which is what I understand the state AG to be concerned about, is an issue, to go back to Judge Hawkins' point, that can be litigated in state court. That's what the Omni case teaches, right? Well, the difference between Omni and here, Your Honor, is that in Omni, we were dealing with a municipality that had acted pursuant to a power that it clearly had, the zoning power. The question was whether or not, in exercising that power, whether it did it in the right way, whether it crossed the T's and dotted the I's. Here, the question is whether or not the cities were allowed to cross T's and dot I's in the first place. In other words, whether or not they were eligible to exercise. Right, that's the parker immunity question, and I'm just trying to, again, I'm just trying to sort of bifurcate, and I don't want to use all your time, but there are two different issues there, and I think you're speaking to the first, not to whether or not the cities were in compliance with the policy adopted by the California legislature. Is that correct? Correct. Okay. So, you have to look at the entire regulatory structure. Here, it's not just whether or not the cities complied with Section 201. It's whether or not they complied with the state policy, and the state policy includes not only Section 201, but also the other decisions regarding those. Are we really looking to see whether or not the California legislature has expressed this policy clearly, that it's intended for cities to have the ability to engage in this kind of activity in the market? Isn't that our mission? That is, Your Honor. Okay. That is, and the state has clearly said that they do not. The state is here today to tell you that the cities did not have the power to. We'll let the state speak to it for itself. I read the state's brief to tell me that they think that the cities aren't in entitled to be grandfathered in, and those are all the matters that it seems to me that Omni says are going to be resolved and ought to be resolved in state court, because as Judge Hawkins has alluded to, there's a real concern about federalism here. But what would be helpful to me is if you could explain why you think the California legislature hasn't clearly expressed a policy that will allow the cities to operate in this way. So, the difference between Omni and this case is, it's not a matter, and let me back up. Section 201 does not say that all cities can do, can displace competition. It says that cities that meet these specific qualifications can displace competition. The facts of the complaint establish that none of the cities in this case meet those standards, so they don't qualify. It would, it would be this. And that, and why can't that issue, why ought not that issue be litigated in state court? Because we're talking about federal supremacy here. Federal supremacy of the antitrust laws yields only when the state, when the state action immunity test is met, and it's up for federal courts to decide whether that's the case. Now, if we, if we were to wait for state courts to decide whether or not a city was allowed to do something, that undermines the federal interest. No, I think, I think you're properly here in federal court, but I just think that the issue in federal court is whether the California legislature has clearly articulated its intent that the municipalities, if they are in compliance, ought to be allowed to engage in this anti-competitive behavior, and that's what I'm trying to get you to focus on. Right. This court decides whether or not California has already expressed that intent. Yes. Clearly, and why, and why do you think the California legislature has not done so? That's my question. What it is, what the California legislature has done, has said that we're going to, we're going to scrap this whole municipal system, and we're going to go to a system where the, the planning is done at the county level, it's approved at the state level, the state will oversee everything, and we'll, we'll have this minor exception where certain municipalities that meet these requirements can continue to provide service. Now, regarding 201, there's a section, it doesn't say anything about creating exclusivity. In fact, California courts have already held in San Bernardino, for example, that nothing in this reference to section 201 suggests that cities or fire districts are to be allowed to expand their services or to create their own exclusive operating areas. So, section 201 doesn't even provide authorization that would be necessary to satisfy clear articulation. Did you, your client, file a companion suit in state court? No, Your Honor. Okay. So, only counties... So, you haven't even tried to ask the courts of California whether 201 extends to cities? No, Your Honor, because we don't think that that's necessary. Okay. California are eligible for 201, do not have the authority to displace competition, and we've also alleged in our complaint that the cities are not eligible under section 201. And we're at the motion to dismiss stage here. The allegations of the complaint must be taken as true. So, only, only the county LEMSAs and EMSAs together can determine whether or not a specific zone can be exclusive or non-exclusive. The default is non-exclusive. That's the default policy in California. The only time that it can be exclusive are the very specific requirements under section 224. Now, in their brief, in their briefs, the appellees argue that at the bottom of 201 suggests that 201 also provides exclusivity. But all that does is prevents the county from coming in and saying, okay, city A here, we're going to deem this exclusive, and we're going to open it up to competitive bidding. And we're going to award it to ambulance company B. But city A qualifies for 201, it's got the right to continue to provide on the city's right to provide services. And there are California cases that have addressed that particular issue, including San Bernardino. The appellees also argue that 1797.6 provides a broad immunity for all California local governments under the antitrust laws. This court just held a in chamber versus Seattle that a provision, a legislative provision that purports to immunize municipalities under the antitrust laws can never provide a clearly articulated state policy to displace competition. Because that's not the state regulating, that's the state simply attempting to immunize conduct. And under the supremacy clause, that just isn't allowed. The other problem with that argument is that Medicare versus air ambulance, this court addressed an issue where the defendants had attempted to monopolize not only the dispatch market, but also the ambulance service market. The court held that simply because the state allows you to do it in one market doesn't mean that you get to do it in every market. Here, in antitrust law, there are always two dimensions to any market. There's the product or service market, such as dispatch versus ambulance services. And then there's the geographic dimension of the market as well. Here, the state of California has already determined which geographic markets competition can be displaced in. The same for government code three. Counsel, did you want to reserve time? Because you're way over. Yes, I did. I wanted to reserve two minutes. Just two? Just two minutes. This is your entire time. Oh, I've already gone through my entire time? You're blasting through. Going through her time. Okay, I'm sorry. Thank you, Your Honor. You're welcome. Counsel, if you'd like to be heard, you need to step right up to the podium, please. Thank you. Good morning, Your Honors. May it please the Court, Carly Eisenberg, on behalf of the California Emergency Medical Services Authority. Your Honor, the state is here today because the district court's interpretation that Section 201 is a legislative grant of immunity would have substantial negative impacts on ensuring emergency medical services. Additionally, the district court's interpretation is contrary to the plain language of the statute and the legislative intent. Your Honor, Judge Christin is absolutely right. It is a bifurcated, two-part analysis. And I apologize if there was any unclear statements in the state's brief. The state is primarily concerned with the proper interpretation of Section 201 and with the EMS Act as a whole. Here, the district court's analysis with regard to legislative immunity hinges on Section 201. However, it's very clear that Section 201 does not provide that immunity. The legislature set out a carefully crafted, two-tier review of emergency medical services, one at the county level and one at the state level. And here, the city's interpretation and the district court's interpretation effectively makes a third tier whereby the cities can effectively operate outside the overview of the state entities because they're seeking not only to retain the services that they have under Section 201, but to retain those services that they have under Section 201. And here, the district court's analysis with regard to legislative immunity hinges on Section 201 and with the EMS Act as a whole. Your Honor, Judge Christin is absolutely right. And I apologize if there was any unclear statements in the state's brief. The district court's analysis with regard to legislative immunity hinges on Section 201 and with the EMS Act as a whole. However, it's very clear that Section 201 does not provide that immunity. However, what the appellees are requesting this court do is confuse Section 224 and Section 201. The legislature granted immunity and exclusivity only for Section 224, so only for the local agencies, not for the cities under Section 201. The whole point of the EMS Act was to integrate and coordinate. And so to incentivize the cities to contract with the counties, they could obtain that darker immunity. So, should we certify the question to the California Supreme Court? Certainly, Your Honor. That is an available remedy, or an alternative remedy. And ask them to interpret 201? Correct. Before we step in? Yes, Your Honor. There is precedent for that. What question will we certify exactly? Whether Section 201 allows cities and fire districts not only to retain the services, but to retain the services to the exclusion of all others? I'm just struggling to see why that isn't a question about the cities not being in compliance with the scheme that the legislature intended, in which case they're not going to be entitled to immunity, and that's an issue that would be decided in state court. Right. So, that's the outstanding question that's never been resolved by the state court. And why in the world would the state attorney general want a federal court to certify that issue rather than a state court? Correct. Which is why, to Judge Hawkins' question, certifying that issue would allow the state court in the first instance to answer that question. But in order for this court to apply immunity, this court would have to determine that the California legislature deemed reasonably foresaw immunity would be applicable to cities and counties. However, under Section 6 of the EMS Act, which is the legislative grant of immunity, it clearly says that it isn't acting that legislative grant of immunity under Section 224 and Section 85 to grant immunity to the LEMSAs, the local emergency medical services agency. And then, within that, much has been made of the subsequent statement that talks about local government entities. However, that is meant to be cities who contract with counties under Section 224 such that they have exclusive operating agreements. So, would we be asking the California Supreme Court to determine law or facts? Law. Or both. It would be law, Your Honor. Purely law. And then they'd be interpreting a statutory scheme to indicate which entities under what circumstances are entitled basically to Parker immunity. Isn't that right? No, Your Honor. They would just be determining what rights cities and local fire districts have under Section 201. Exactly. Correct. And that determination on the state law issue would easily resolve the federal issue because the state law issue that is outstanding is whether 201 allows the cities and entities not only to retain services but to exclude other providers. Is there some reason the State Attorney General hasn't initiated litigation in state court to press this point and get the ruling that it needs? No, Your Honor. It has been sued twice in federal court. No, I'm asking is there some reason the State Attorney General hasn't initiated a lawsuit in state court to get this ruling that you're seeking about the correct interpretation of California law? Your Honor, I don't have an answer to that today. I'm not quite sure. It's above your pay grade. Correct. Judge Hawkins. It just seems to be the obvious answer, and I guess we've asked it now a couple of different ways, but it is curious and unusual for us to hear a state ask a federal court to make this kind of a determination. Usually it's quite the contrary, and we're being asked to stay out of it. All right. Is there anything further? You're well over your time. Thank you, Your Honor. May it please the Court. My name is Kendall McVeigh. I am arguing on behalf of the city appellees. I have reserved nine minutes for my time. Each lawsuit against the 12 cities suffers from two fatal defects. Number one, each lawsuit fails to allege a plausible antitrust injury, and number two, each lawsuit is barred by the state action doctrine. What is not at issue in this case is whether the EMSA or local agencies may exercise medical control over the cities to ensure that their medical quality standards are met. What is at issue in this case is a challenge to rights that go back under 201, that go back almost 40 years ago. And yet, in the last four decades, that's already been observed. Neither the EMSA or anybody, including AmeriCare, has bothered to challenge that assertion of rights in state court. Instead, it's done it through the back door of a federal antitrust lawsuit, and that door has to be closed by those two fatal defects. Take very briefly the antitrust injury problem. The entire claim of antitrust injury rests upon a form letter that AmeriCare sent on the same day to all 12 cities. That letter changed the names, but basically the letter was the same, and it requested to be put on rotational ambulance service status. It did not explain that it was sending this to 12 cities. It did not explain how it would be able to provide service for all 12 cities at the same time. It did not explain in that little over one-page request, that form letter request, what personnel and equipment would be provided, what insurance would be there, what indemnifications would be offered, what response times would be involved. None of that was there. And no city could have been in a position to grant this request. That is the entire basis in every one of these complaints, were there antitrust injury, and a lax plausibility. Not only the 12 cities would not be in a position to accept that so-called request, no city in the state of California could have. They wouldn't have known what they had agreed to. And under the Twombly and Iqbal cases, by itself, if you have an implausible claim of antitrust injury, that's the end of it. Twombly makes it clear you're not to launch expensive antitrust litigation without having to meet the fundamental standards of plausibility here, and it's not plausible here. Now, getting to the state action issue, the courts have universally rejected extending federal antitrust liability to governmental municipal functions. That's what was done in the Omni case, where the Supreme Court found that the authorization of zoning clearly articulated a policy to displace competition. That's even more so in this instance. In the case of ambulance services, we have a network of statutes here. It's just not the EMS Act. There's also Government Code 38794, for example, that has not been modified by the EMS Act. It's still there. And this Court found in the Springs Ambulance case that that would allow for exclusivity for cities in providing ambulance services or contracting for ambulance services. There are other various statutes that are cited in our brief. If you take them separately or you take them collectively, they clearly articulate and firmly express a State policy to displace competition in a field where it's already known private competition will not work in this field. It's not like a normal kind of marketplace situation. But it was conditional, right? And that's opposing counsel's argument, that the municipalities in this case are not in compliance, so they don't qualify. Are you going to respond to that? Yes. Two responses. First, under Omni and the Boone v. Redevelopment case that this Court has decided, it doesn't matter. That is not a foundation for a federal antitrust lawsuit. Second response is, we are in compliance. And I'll get to each one of those. You're not going to ask us to enter a ruling that you are in compliance with State law, right? Absolutely not. Because it would really ruin my day. No, absolutely not. Okay. But I do want to make it clear that 201 does in itself clearly articulate a policy to displace competition. Okay. So you've used five minutes. You've used five minutes. Is that your intention? No. To split it?  Let me go to the point about whether this is an appropriate case for this Court to consider. And I would point out to the Boone v. Redevelopment agency of the City of San Jose case. I think it's all clearly on point. In that case, this Court said, presuming that the local agency is acting outside of statutory authority, presuming there are anti-competitive effects, that is not a basis for a federal antitrust lawsuit. And that is not a basis for defeating state action immunity. The remedy was pointed out by this Court was to go into state court. And that's what they have not done. And we have not had any rational explanation from either one as to why they haven't done that. The Omni case, the Halley case, the whole series of case law establishes that it's not the job of a federal judge to, under the guise of an antitrust lawsuit, to arbitrate these disputes. That has already been said time and again. And that is what is being asked by AmeriCare and now apparently by the MSA. Again, without any explanation as to why they haven't gone the normal course. One point that I want to also assert, though, is that it has been suggested that exclusivity is only allowed under 224 of the Act. That's not true. And this Court has indicated that it's not true. In the Mercy Peninsula case, the federal district court found that there could be an exclusive server-provider agreement under the Act and it was protected by state immunity. Why is that important? It's important because 224 didn't exist at the time. It hadn't been passed. It hadn't been acted. It wasn't effective. And yet the Court found, in that instance, that there could be exclusive server-providers under the Act as it existed at that time. And this Court affirmed that decision. And this Court, in doing that, said virtually any anticompetitive Act, including exclusive server-provider agreements, can be contemplated under the Act. That federal district court decision, by the way, was also cited by the California Supreme Court in the County of San Bernardino case with approval for making the statement that the EMS Act displaces competition in the field. And if it does displace competition in the field, as like under the Trabeck case, that's enough. We're acting within the field. This is not a situation where somehow this should be transformed into what is a state dispute or a state law dispute into a federal antitrust claim. I'm going to address a few more points, Your Honor, in addition to that, that have been raised in the briefing. As far as the market participant exception has not been discussed or raised by an oral argument. But it does raise, and what we face here in this case is what that proposed exception means. And it also raises a very serious question about what, in this instance, where the idea of having a governmental municipal function that is long-standing, long-established, recognized by the state legislature as such, can suddenly be turned into a federal antitrust lawsuit. Counsel, Mr. Gott, has indicated that you can use the definition of the function geographically and product-wise in order to create a cause of action under the Sherman Act. That's terrifying, frankly, for all local governments. There's a total of six minutes left now. Yes. He's awfully antsy over there. Thank you. Thank you, Your Honor. Thank you, Your Honors. Good morning. May it please the Court. Faisal Zuberi on behalf of the Appellee Care Ambulance Service, Inc. Appellant fails to cite a single case that entitles a municipality or other government entity to park or immunity for a specific activity, but then does not extend that same immunity to its chosen contractor to carry out that specific activity. Under either the Parker Doctrine or the Norr-Pennington Doctrine, care is entitled to immunity. In fact, care is entitled to immunity separately under the Norr-Pennington Doctrine, regardless of whether or not the cities are entitled to Parker immunity in this case, and they are. I will revisit the Parker Doctrine. But before I do, I just wanted to quickly address why the Norr-Pennington Doctrine application to care in this case is straightforward and care is entitled to immunity under the Norr-Pennington Doctrine, regardless of what the EMS statutes say. This Court in Caudill v. Northwest Kidney Centers, which is a decision that's cited in our brief, at page 1059 of that decision, says, quote, The Norr-Pennington Doctrine sweeps broadly, and it applies to petitioning that is directed toward any government entity. The Supreme Court in Norr and Pennington has confirmed that petitioning, even for an anti-competitive outcome, is entitled to First Amendment protection, and this Court and circuit courts from all across the country uniformly hold that private parties are protected from antitrust liability under the Norr-Pennington Doctrine in relation to their exclusive government agreements, including the anti-competitive outcomes of those agreements in any situation. Appellants' insurmountable burden with respect to the Norr-Pennington Doctrine is that there isn't a single case anywhere in the country that imposes liability on a private party in relation to its exclusive government contract or the anti-competitive outcome of that contract. In fact, this Court in Sanders v. Brown, which is another decision cited in our papers, held that you can't plead around Norr-Pennington by focusing only on the anti-competitive outcome of an agreement. In that case, the plaintiff didn't even complain about the agreement itself, but only the fact that the private cigarette company defendants in that case were, as a result of the agreement, able to collude in order to set higher cigarette prices, and this Court held that Norr-Pennington nevertheless applies to immunize the private party defendants in that case. This Court in Sessions v. Tankliners, which is another decision cited in our brief, held that the Norr-Pennington Doctrine applies, despite the fact that Parker doesn't apply to the city defendants in that case. The Court didn't even address whether or not the city defendants or the government defendants in that case were entitled to Parker immunity in the first place. Unless the panel has any questions on Norr-Pennington, I will then move on to Parker. In relation to the Parker Doctrine, we agree with the cities that the intent to displace competition could not have been more clearly expressed. If Norr-Pennington applies to your client, we don't even need to look at Parker, do we? That would be correct, with respect to our client, at least. However, courts have as an alternative basis. But you want to talk anyway. Sure. Since it was an alternative basis for the Court's holding, belts and suspenders, I'll just take a few minutes and touch on a couple of points that no one else touched on, if that's okay. The Emergency Medical Services Association of California recently in a federal court filing acknowledged that the use of the term local government entities under 1797.6 was meant to include the cities. We've attached a copy of their brief to our motion for judicial notice, and we agree. I mean, 1797.6 couldn't have been – there couldn't have been a clearer articulation of an intent to displace competition than is included in 1797.6. The Supreme Court, since every decision that it's issued since Hallie, has held that you do not need an express statement regarding the intent to displace competition, but that's actually what we have in this case. Moving on to whether or not the second prong of the Parker immunity test applies, the Mid-Cal Supreme Court test for Parker immunity has prong one, clear articulation of intent to displace competition, which clearly exists. Then it has prong two, state supervision. Appellant cannot cite a single case that applies the second prong to a municipality or to an exclusive government contractor. The fundamental difference between the cases that apply both Mid-Cal prongs in our case is that all of the cases that apply both Mid-Cal prongs involve situations where there's a state policy that authorizes private parties to collude in order to exercise market power. That was the situation in the Mid-Cal Supreme Court case itself, in North Carolina Dental, and in the Chambers of Commerce v. Seattle case that was cited in the appellant's supplemental authorities. There is just no precedent for imposing the second prong on either a municipality or its exclusive contractor. In fact, this court held in Charlie's Taxi Radio and circuit courts from across the country have resoundingly concluded that the exclusive contractor of an already immune government entity does not need to demonstrate the second prong of the Parker Mid-Cal test in order to be entitled to state action immunity. So we are entitled to both Norr-Pennington immunity and Parker immunity, even assuming that state supervision was required, even assuming that second prong was required. Here we have municipal supervision, and this court held in Tom Hudson that municipal supervision is by itself sufficient. And even assuming that municipal supervision was by itself not sufficient, we have an additional layer of state supervision in this case. As acknowledged by the amicus brief that was filed by the Emergency Medical Services Administrators Association of California in support of the appellant, that's an association which actually represents the local EMS agencies. 201 cities have been part of the California landscape for the last 40 years and continue to be. And although the local EMS agencies have no say in who those 201 providers are, they do nevertheless supervise virtually every aspect of what those 201 providers do. In fact, in this case, the County of Orange, in conjunction with the local EMS agency, the Orange County Emergency Medical Services Association, has enacted ordinances that we've attached to our supplemental excerpts of records at pages 70 through 90, which govern virtually every aspect of the services that CARE provides. Thank you, counsel. You're over your time. Appreciate it. Thank you. Is there any time left? No. Please put two minutes on the clock. Your Honors, I want to stress that it's not about compliance when it comes to a clearly articulated policy in this case. What we're looking at is whether the state intended for these particular appellees to displace competition. And under 201, it's clear that they did not. Sorry, under 201 and the facts of the complaint, it is clear that they were not eligible to displace competition under the state regulatory scheme. It is the job of the federal courts to enforce the Sherman Act, which is the supreme law of the land. The state action immunity is a limited and disfavored affirmative defense. It's actually an exemption, not an immunity, that's only designed to accommodate the state's residual power to regulate. So it's not about whether AmeriCARE can defeat the state action immunity. It's whether or not the defendants can meet their heavy burden to show that they are acting pursuant to a clearly articulated policy to displace competition. They cannot do that. In terms of whether the active supervision requirement applies, counsel said that there's no case that applies that requirement to municipalities. But this court just decided in Chamber v. Seattle that where private parties are involved in implementing the anti-competitive scheme, state supervision is required. In that case, the court also said that a sub-state entity is not sovereign and it is not a substitute for the state. It cannot provide that supervision. Only the state itself can provide the supervision. In this case, that would be EMSA and the legislature. Is the Chamber case in your brief? It is not, Your Honor, but we did file a notice of supplemental authority. You filed a 28-J? Yes. And with that, I will conclude my presentation. Thank you. Thank you all for your arguments. I didn't realize there was a motion in the case just argued, so we'll deal with it. We'll go on to the next case on the calendar, which is 17-55642, Lambus v. I don't know how to pronounce this one either, Syassat? Maybe you can correct me when you get to that.
judges: Hawkins, Christen, Hoyt